## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Veronica Bramlett, on behalf of herself and all others similarly situated, | |
| Plaintiff, | CASE NO. |
| v. | CLASS ACTION COMPLAINT |
| RES 360 LLC, and Peach City Properties LLC, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

### Nature of this Action

1.     Veronica Bramlett ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against RES 360 LLC ("RES") and Peach City Properties LLC ("PCP", and collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2.     Upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing text message to residential telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

### Parties

3.     Plaintiff is a natural person who at all relevant times resided in Austell,

1

Georgia.

4.      RES is a Wyoming limited liability company, which operates a real estate marketing and lead generation business headquartered in Atlanta, Georgia.

5.      PCP is a Georgia limited liability company, which operates a real estate and lead generation business headquartered in Atlanta, Georgia.

6.      Defendants are owned in whole or in part by Julian Rizov.[1]

7.      Defendants collectively operate a real estate brand known as "RES 360", which is short for "Real Estate Solutions 360", and which, among other things, buys and sells real estate in Georgia, Florida, and Nevada.[2]

8.      Defendants employ at least one real estate agent, Vesselka Rizov—Mr. Rizov's wife—as part of their real estate business.[3]

9.      Upon information and belief, Defendants share common management and employees, and share principal offices at 300 Colonial Center Parkway, STE 100N, Roswell, GA, 30076.

## Jurisdiction and Venue

10.      This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

---

[1]      https://www.facebook.com/julian.rizov.7/ ("Co-Founder/CEO" for PCP and "Co-Founder/Partner" for RES) (last visited June 4, 2025).

[2]      https://flow.page/res360 (last visited June 4, 2025).

[3]      https://www.instagram.com/p/CAvPlfcjbqY/ (last visited June 4, 2025).

11.    Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) and (b)(2) as Plaintiff and Defendants are based in this district and a significant portion of the events giving rise to this action occurred in this district.

12.    In particular, Defendants directed text messages to Plaintiff's telephone number from this district, and Plaintiff received Defendants' text messages in this district.

**Factual Allegations**

13.    Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(404) 276-XXXX.

14.    Plaintiff uses her cellular telephone as her personal residential telephone number.

15.    In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

16.    Plaintiff registered her cellular telephone number with the DNC Registry on April 4, 2013, and has maintained that registration through the present date.

17.    Beginning in February 2024, and continuing on an intermittent basis, Plaintiff received numerous text messages from telephone number (470) 594-3570,

coming from a person named "Andy" on behalf of "RES360":



18.    The text messages seek to solicit Plaintiff to use "RES360" in the sale of real property.

19.    Plaintiff received at least seven text messages from (470) 594-3570.

20.    Plaintiff did not recognize the sender of these text messages.

21.    Plaintiff did not request any assistance or services to sell her home.

22.    Plaintiff is not, and was not, interested in selling her home.

23.    Plaintiff did not recognize "Andy," "RES360", or the telephone number associated with these messages, and had not made any inquiries regarding the purchase or sale of real estate.

24.    Plaintiff is not, and was not, interested in Defendants' services or marketing.

25.   Upon information and belief, Plaintiff believes she may have received additional telephone text messages or calls from Defendants.

26.   All of the above communications to Plaintiff indicate they are from an "Andy" at "RES360."

27.   Upon information and belief, "RES360" is an unregistered trade name for RES, which is a real estate investment company that seeks to solicit homeowners to sell their property to it, or to use Defendants' real estate services in a real estate property sale transaction.

28.   RES's primary website—https://res360.co/—states: "RES 360 is an Atlanta-based Real Estate Investment Company specializing in creative solutions for homeowners and investors."

29.   This website lists a "main" telephone line at (404) 400-2450.[4]

30.   Additionally, RES's website offers to direct visitors to sell their property, complete an application to become an "investor" with RES, or to "find a loan."[5]

31.   RES further promotes its multi-faceted service profile in its "About Us" webpage:[6]

---

[4]      https://res360.co/acquisitions (last visited June 4, 2025).

[5]      https://res360.co/ (last visited June 4, 2025).

[6]      https://res360.co/about-us (last visited June 4, 2025). Upon information and belief, Vesselka Rizov is depicted in the photograph on this webpage.

> RES 360 is an Atlanta-based Real Estate Solutions Company that specializes in creative solutions for homeowners with troublesome houses. Through our team's extensive experience and knowledge in the real estate business and a plethora of resources and network connections, we are dedicated to helping the people in our community with all their real estate needs. Whether you are a first-time homebuyer or looking to sell your home without all the hassle - we are here to help!
>
> We know that each homeowner's circumstances are unique, and that is why we are dedicated to helping our clients through their specific situation, whatever that may be. Everything happens on their terms and conditions, without any listing or realtor. We will buy the house as-is and will pay all cash for it. We pride ourselves on making the home-selling experience simple, fast, and hassle-free.
>
> If you are a buyer looking to purchase a property, we do sell our homes completely renovated and in move-in condition, directly to buyers. If we do not have a home to sell to you, we will connect you with a top real estate agent who will help you find the perfect home for you.
>
> RES 360 is committed to creating and nurturing a healthy relationship with each individual client. We put your needs first and are devoted to helping you achieve your real estate goals.

32.    In other words, RES purports to help buyers and sellers with real estate services, and even offers to connect prospective customers to a real estate agent which, upon information and belief, is Mr. Rizov's wife, Vesselka Rizov.

33.    RES also discusses that it specializes in rehabilitation and new constructions of residential property.[7]

34.    Upon information and belief, RES performs these rehabilitations and constructions through a separate entity also owned by Mr. Rizov.

---

[7]    https://res360.co/construction (last visited June 4, 2025).

35.   RES's website lists a number of partners, including PCP, through a link to PCP's website, https://peachcityinvestments.com/.[8]

36.   RES's LinkedIn page directs visitors to visit PCP's website.[9]

37.   PCP's website lists the same contact telephone number as RES.[10]

38.   PCP's website's privacy policy directs inquiries to RES.[11]

39.   Therefore, given the overlap and interrelation between PCP and RES, PCP serves as the "home-buying" arm for RES, whereas RES focuses on renovation and construction property developments.

40.   Alternatively, RES serves as the marketing and telemarketing arm for Mr. Rizov's real estate business, PCP serves as the "cash for home buyer", and one or more related entities serve as title holders to any properties that are being rehabilitated or developed.

41.   In its website, PCP also purports to pair numerous services with its offers to buy Plaintiff's property and its website goes into more detail regarding the home-purchase process.[12]

---

[8]    https://res360.co/partners--lenders    (last    visited    June    4,    2025); https://flow.page/res360 (last visited June 4, 2025).

[9]    https://www.linkedin.com/company/res-360/about/    (last visited    June    4, 2025).

[10]    https://peachcityinvestments.com/ (last visited June 4, 2025).

[11]    https://peachcityinvestments.com/privacy (last visited June 4, 2025).

[12]    https://peachcityinvestments.com/    (last    visited    June    4,    2025); https://peachcityinvestments.com/about-us (last visited June 4, 2025).

42.    In doing so, PCP offers to purchase homeowners' properties for cash, offering to take care of all aspects of the transaction to facilitate a quick transaction.

43.    PCP necessarily offers to pair numerous services offered by a real estate agent—appraising the fair market value of the property, arranging for title and escrow services, preparing and completing purchase paperwork, and connecting the homeowner with potential third-party buyers—with its communications to Plaintiff.[13]

44.    Prior to receiving the above communications, Plaintiff did not previously interact with any of Defendants' websites.

45.    Upon information and belief, Defendants seek to supplant the role of a traditional real estate agent while providing many of the same services as a real estate agent, and in exchange for doing so, are compensated by obtaining a homeowner's property at a reduced price, and thereafter either (1) selling it at an inflated price; (2) assigning the right to purchase the property to a third party in exchange for a fee; or (3) renting the property as a landlord.

46.    Upon information and belief, in exchange for providing these services,

---

[13]    *See, e.g.*,   https://www.liveabout.com/what-real-estate-agents-do-2866370 (noting that real estate agents assist home sellers by, among other things, "[d]etermin[ing[ the home's value in the current market"; "[c]oordinat[ing] the process from signing the contract to closing the deal, including scheduling inspections, preparing documents and other items necessary to close"; and "help[ing] the seller to try to get the price they want and to obtain a signed purchase agreement.") (last visited June 4, 2025).

Defendants pay substantially below fair market value for the homes they seek to purchase.

47.    Upon information and belief, Defendants utilize other entities owned by Mr. Rizov to hold title to any properties they do not immediately sell via assignment.

48.    As a result, Defendants would be (and, upon belief and information, are) compensated for its services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

49.    Therefore, upon information and belief, Defendants are real estate wholesalers, which is a strategy in which a wholesaler seeks to (1) persuade a homeowner to sell their home to the wholesaler at a substantial discount below fair market value, in exchange for a suite of services to ease the sale, then (2) prior to completing the purchase, remarket the property to third-party purchasers or investors, to (3) assign or sell the contract to that investor for a substantial premium, thereby allowing the investor to step into Defendants' shoes and acquire the house instead, with the difference in price solely allocated to Defendants as profit, instead of the homeowner.

50.    Therefore, Defendants provide services—appraisal, title and escrow, completion of paperwork, and remarketing to third party buyers—and derive profit

off of effective or direct fees, at all points in the transaction with the homeowner.

51.    Upon information and belief, Defendants' actions underlying this lawsuit extend generally to all of its real estate operations, including operations derived from its telemarketing efforts.

52.    PCP appears to either join in RES's telemarketing campaigns and separately conduct its own telemarketing campaigns, as reflected by former employees at PCP.[14]

53.    Therefore, upon information and belief, given the significant overlap of ownership, employees, and management between Defendants, the sharing of offices and telephone number, and the fact that they operate within the same real estate arena, RES and PCP operate their telemarketing campaigns as a joint enterprise.

54.    Moreover, upon information and belief, to the extent that a consumer expresses interest in selling their home (or buying one) in response to RES's telemarketing messages, RES then refers those consumers for conventional real estate representation by PCP.

55.    Upon information and belief, RES and PCP have knowledge of—and focus their business on—the same real estate investment solicitations that RES does,

---

[14]    https://www.linkedin.com/in/ashley-kigwe/ (stating that she was a "Wholesale Sales Specialist" who "[c]onducted detailed searches through the MLS database to align properties with client preferences and investment criteria" and "[e]xecuted cold calling campaigns to generate leads and establish connections with motivated sellers and buyers.") (last visited June 4, 2025).

and is therefore liable as either a joint sender of the communications at issue, or because RES had actual or apparent authority to send those messages on PCP's behalf.

56.    Moreover, PCP ratified RES's conduct by both accepting the benefits of RES's transactions, by accepting compensation for transactions funneled to PCP, or fees for transactions that PCP facilitates for RES, and by openly touting each other's actions to promote themselves to consumers.

57.    Plaintiff did not give Defendants prior express consent or prior express written consent to send text messages to her cellular telephone number.

58.    Defendants sent the text messages at issue for non-emergency purposes.

59.    Upon information and belief, Defendants sent the text messages at issue voluntarily.

60.    The purpose of the text messages at issue was to advertise and to market Defendants' business or services.

61.    Additionally, upon information and belief, Defendants also collect motivated seller consumer data and resell that information to investors, including by way of executing assignment contracts.

62.    As a result, RES either (1) solicited Plaintiff to sell her home to them at a discount in order for Defendants to resell or rent Plaintiff's home; (2) solicited Plaintiff to submit her information to Defendants' lead generation service and, if

Plaintiff expressed an interest in selling their home, Defendants would then sell that via an assignment contract or immediate purchase-and-resale to investors for a profit; or (3) if Plaintiff did not want to sell her home but otherwise expressed interest in a represented real estate transaction, solicited Plaintiff to be referred for "conventional" real estate brokerage representation.

63.    Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages to her cellular telephone number.

64.    Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

65.    Upon information and belief, Defendants knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

**Class Action Allegations**

66.    Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as representatives of the following class (the "Class"):

> All persons throughout the United States (1) to whom RES 360 LLC or Peach City Properties LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting RES 360 LLC's or Peach City Properties LLC's, or their business partners', goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before RES 360 LLC or Peach City Properties LLC delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

67.    Excluded from the Class are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

68.    Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable.

69.    The exact number of members of the Class is unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

70.    The members of the Class are ascertainable because the Class is defined by reference to objective criteria.

71.    In addition, the members of the Class are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Class.

72.    Plaintiff's claims are typical of the claims of the members of the Class.

73.    As they did for all members of the Class, Defendants delivered solicitation text messages to Plaintiff's telephone numbers more than thirty days after Plaintiff registered her cellular telephone number with the DNC Registry.

74.    Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice, and procedure on the part of Defendants.

75.    Plaintiff's claims are based on the same theories as are the claims of the members of the Class.

76.    Plaintiff suffered the same injuries as the members of the Class.

77.    Plaintiff will fairly and adequately protect the interests of the members of the Class.

78.    Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Class.

79.    Plaintiff will vigorously pursue the claims of the members of the Class.

80.    Plaintiff has retained counsel experienced and competent in class action litigation.

81.    Plaintiff's counsel will vigorously pursue this matter.

82.    Plaintiff's counsel will assert, protect, and otherwise represent the members of the Class.

83.    The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of the Class.

84.    Issues of law and fact common to all members of the Class include:

    a.    Defendants' conduct, pattern, and practices as it pertains to delivering advertisement and telemarketing text messages;

    b.    For the Class, Defendants' practice of delivering text messages, for solicitation purposes, to telephone numbers already

registered on the DNC Registry for more than thirty days;

    c.    Whether PCP is responsible for the conduct of RES as either a joint venture, or based on agency theories;

    d.    Defendants' violations of the TCPA; and

    e.    The availability of statutory penalties.

85.    A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

86.    If brought and prosecuted individually, the claims of the members of the Class would require proof of the same material and substantive facts.

87.    The pursuit of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class, and could substantially impair or impede their ability to protect their interests.

88.    The pursuit of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

89.    These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.

90.    The damages suffered by the individual member of the Class may be

relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Class to redress the wrongs done to them.

91.    The pursuit of Plaintiff's claims, and the claims of the members of the Class, in one forum will achieve efficiency and promote judicial economy.

92.    There will be no extraordinary difficulty in the management of this action as a class action.

93.    Defendants acted or refused to act on grounds generally applicable to the members of the Class, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Class**

94.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-93.

95.    A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

96.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

16

residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

97.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

98.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

99.    Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

100.    Defendants violated 47 U.S.C. § 227(c)(5) because they placed, or caused to be placed, to Plaintiff and members of the Class, more than one solicitation text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

101.   In the alternative, RES violated 47 U.S.C. § 227(c)(5) by delivering more than one solicitation text message in a 12-month period in violation of 47 C.F.R. § 64.1200(c), and PCP is liable for RES's violations because (1) PCP is owned and operated by the same persons, and conducting the same business; (2) PCP ratified RES's conduct by either accepting leads generated by RES's telemarketing campaign, agreeing to receive revenue that arouse out of RES's telemarketing campaign, and promoting RES's conduct in its communications to consumers; and (3) RES acted with actual authority on behalf of PCP in delivering solicitation text messages in violation of 47 C.F.R. § 64.1200(c).

102.   As a result, PCP would also be vicariously liable for RES's conduct.

## Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.   Determining that this action is a proper class action;

b.   Designating Plaintiff as class representative of the proposed Class under Federal Rule of Civil Procedure 23;

c.   Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d.   Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e.   Enjoining Defendants from continuing their violative behavior,

including delivering solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f.    Awarding Plaintiff and the members of the Class damages under 47 U.S.C. § 227(c)(5)(B);

g.    Awarding Plaintiff and the members of the Class treble damages under 47 U.S.C. § 227(c)(5)(C);

h.    Awarding Plaintiff and the members of the Class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i.    Awarding Plaintiff and the members of the Class any pre-judgment and post-judgment interest as may be allowed under the law; and

j.    Awarding such other and further relief as the Court may deem just and proper.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: June 13, 2025                          */s/ Rachel Berlin Benjamin*
                                             Rachel Berlin Benjamin
                                             Georgia Bar No. 707419
                                             rachel@beal.law
                                             Beal Sutherland Berlin & Brown LLC
                                             2200 Century Parkway NE
                                             Suite 100
                                             Atlanta GA 30345
                                             Telephone: (404) 476-5305

                                             Bryan A. Giribaldo* (to seek admission pro
                                             hac vice)
                                             **PARDELL, KRUZYK & GIRIBALDO, PLLC**
                                             7500 Rialto Blvd., Suite 1-250
                                             Austin, Texas 78735
                                             Tele: (561) 726-8444
                                             bgiribaldo@pkglegal.com

                                             *Counsel for Plaintiff and the proposed class*