## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Veronica Bramlett, on behalf of
herself and all others similarly
situated,

               Plaintiff,

                            Case No. 1:25-cv-3312-MLB

v.

RES 360 LLC and Peach City
Properties LLC,

               Defendants.

_____/

## OPINION & ORDER

In early 2024, Defendants sent Plaintiff several text messages offering to buy her home. (Dkt. 1 ¶ 17.)[1] The messages said Defendants "specialize[d] in buying land quickly and efficiently," were "on the lookout

---

[1] Although the messages were purportedly from "Andy" at "RES360," the complaint alleges "[both] Defendants sent the text messages at issue" and neither Defendant disputes that assertion in their briefing. (Dkt. 1 ¶¶ 6, 26, 55–56, 59; *see* Dkt. 14 at 1 (Defendants admitting "Bartlett alleges that Res 360 and Peach City sent her a series of text messages" and arguing dismissal is warranted "even if Res 360 and Peach City sent the alleged text messages").) More generally, the parties treat Defendants as a single entity throughout their briefing, so the Court takes the same approach in this Order.

for potential properties in [Plaintiff's] neighborhood," "[n]oticed [Plaintiff's] property and wanted to see if [she was] thinking about parting ways with it," wanted to discuss "the advantages of a straightforward home sale," could "make [Plaintiff] a deal and close in as little as two weeks," could make the process "quick and easy," could avoid "the hassle" of a public listing, and could "take the burden off [Plaintiff's] shoulders." (Dkt. 1 ¶ 17.) Plaintiff was listed on the national do-not-call registry, had no prior relationship with Defendants, had not requested Defendants' assistance, and was not interested in selling her home. (Dkt. 1 ¶¶ 16, 20–24, 57, 63.) So she sued Defendants for telephone solicitation under the Telephone Consumer Protection Act ("TCPA"). (Dkt. 1.) Defendants now move to dismiss for failure to state a claim. (Dkt. 14.) The Court dismisses some of Plaintiff's theories but otherwise denies Defendants' motion.

## I.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than a "mere possibility of misconduct." *Id.* at 679. Plaintiff's well-pled allegations must "nudge[] [her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II. Discussion

The complaint claims Defendants' text messages violated the TCPA's prohibition against "telephone solicitation." (Dkt. 1 ¶¶ 94–102.) Defendants argue the Court should dismiss this claim because Defendants' messages were not telephone solicitations within the meaning of the statute. (Dkt. 14 at 5.) The Court disagrees.

The TCPA defines a telephone solicitation as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). It is undisputed that Defendants' text messages qualify as "telephone calls" under the TCPA, and that Defendants "initiated" those messages and "transmitted" them to Plaintiff. So the only question is whether Defendants sent the messages for a prohibited "purpose."

Plaintiff plausibly alleges they did.  That is so because, taking Plaintiff's allegations as true, (1) whenever Defendants buy a home, they "take care of all aspects of the transaction" and provide "numerous services offered by a real estate agent"; (2) these services include "appraising the fair market value of the property, arranging for title and escrow services, [and] preparing and completing purchase paperwork"; (3) Defendants charge the homeowner a "substantial" fee for these services, which they deduct from the purchase price of the home; (4) Defendants "derive [a] profit" from this fee; (5) Defendants' approach—bundling the sale of real estate services with the purchase of a home in order to generate profit from the sale of services—is a core part of their business model; (6) in the text messages here, Defendants offered to buy Plaintiff's home in a "hassle-free" transaction that "t[ook] the burden off [Plaintiff's] shoulders"; (7) this was plausibly an attempt to do what Defendants always did, namely, buy a house and sell "a suite of services to ease the sale"; and thus (8) Defendants acted with "the purpose of encouraging" Plaintiff to "purchase" their "services," as required for telephone solicitation under the TCPA.  (Dkt. 1 ¶¶ 31, 41–43, 45–46, 48–50); *see Moonsawmy v. JWS Acquisitions, LLC*, 2024 WL 6910422, at *2–3 (N.D.

4

Ga. July 18, 2024) ("offers to purchase homes . . . may be telephone solicitations" where defendant "implicit[ly] offers" to sell "related real estate services").[2]

Defendants counter that their text messages did not explicitly mention any real estate services. (Dkt. 14 at 7–8.)  But the TCPA does not "require an explicit mention of a . . . service" where "the context" plausibly suggests the caller was trying to sell services to the recipient. *Golan v. Veritas Ent., LLC*, 788 F.3d 814, 820 (8th Cir. 2015) (rejecting defendants' argument that courts "should consider only the content of the calls in determining whether they were [made for a prohibited purpose]"). That kind of context exists here.  According to the complaint, when Defendants buy a home, they sell "services [typically] offered by a real estate agent" in order to make the transaction "quick" and "hassle-free" and in order to make a profit on those services. (Dkt. 1 ¶¶ 31, 41–43, 45–46, 48–50.)  And, when Defendants asked to buy *Plaintiff's* home, they offered to do so in a "hassle-free" transaction that (1) was "quick," "easy,"

_____

[2] No one argues Defendants' messages encouraged Plaintiff to purchase services with *property* rather than *money*, that Defendants would only receive money for Plaintiff's property—if at all—from third parties in later transactions, or that any of this means the messages were not telephone solicitations.  So the Court does not address these issues.

"fast," "efficient[]," and "straightforward"; (2) did not require Plaintiff to face "the daunting task" of putting her property on the market; and (3) "t[ook] the burden off [Plaintiff's] shoulders." (Dkt. 1 ¶ 17.) Reading these messages in the light of Defendants' alleged business model—that is, reading the messages in "context"—it is plausible that Defendants were trying to sell their real estate services when they offered to buy Plaintiff's home.

Defendants next argue that, even if they "intended to gain some financial advantage by purchasing [Plaintiff's] property, that fact would not transform [Defendants'] offers to buy her land into telephone solicitations." (Dkt. 14 at 9.) But Plaintiff does not allege only that Defendants sought to make money. She alleges Defendants sought to make money *by encouraging her to purchase their services*. This is a prohibited purpose under the TCPA. *See* 47 U.S.C. § 227(a)(4), (c); 47 C.F.R. § 64.1200(c)(2), (f)(15) (prohibiting "the initiation of a telephone call or message *for the purpose of encouraging the purchase . . . of . . . services*" (emphasis added)).

Defendants also argue that the TCPA permits a caller to try to purchase property from the call recipient, and thus it must also permit

the caller to perform the services required to effectuate that purchase. (Dkt. 14 at 9–10.)  Maybe so, but that does not describe the facts here. Plaintiff does not allege only that Defendants offered to buy her home and then performed—or would have performed—the services required to complete the transaction.  Instead, she alleges Defendants offered to buy her home for the *specific reason* that they wanted to charge her a substantial premium for related services, including for services that may not have been strictly necessary to effectuate Defendants' purchase of the home.  This meets the statutory definition of a telephone solicitation because it suggests Defendants acted with "the purpose of encouraging" Plaintiff to "purchase" their "services."

Finally, Defendants cite a few district court cases and claim they support dismissal here.  (Dkts. 14 at 6–7; 16 at 3–6.)  None of those cases are from this circuit.  And, as Defendants concede, several courts— including in this district—"have reached a different conclusion than that argued by Defendants."  (Dkt. 16 at 6; *see* Dkt. 15 at 12–20 (collecting cases).)  The Court is not inclined to dismiss Plaintiff's complaint at this early stage based only on the out-of-circuit district court cases on which Defendants rely.

7

Plaintiff's claims may thus proceed to the extent she alleges Defendants implicitly offered to "take care of all aspects" of Defendants' purchase of Plaintiff's home—including "appraisal, title and escrow, [and] completion of paperwork"—in exchange for a fee baked into the purchase price of the home. (*See* Dkt. 1 ¶¶ 41–50.) To the extent Plaintiff asserts other theories of telephone solicitation, however, the Court grants Defendants' motion and dismisses those theories. Specifically, Plaintiff claims Defendants messaged her not just to sell her the real estate services incidental to Defendants' purchase of her home, but also to sell her "some or all" of Defendants' other "offerings," including loan services, investment opportunities, home construction, home renovation, "conventional real estate brokerage representation," and the option to purchase a home directly from Defendants. (*See* Dkts. 15 at 23–24, 26; 1 ¶¶ 28–40, 62.) The content of Defendants' text messages does not support these theories, even considering the broader context and the totality of Plaintiff's allegations. So the theories may not proceed.

## III. Conclusion

Defendants' Motion to Dismiss (Dkt. 14) is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED** this 4th day of March, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE